PEOPLE v AL-SAIEGH

Docket No. 223675. Submitted November 8, 2000, at Detroit. Decided January 23, 2001, at 9:10 A.M.

Mazen Al-Saiegh was convicted following a bench trial in the Wayne Circuit Court, Prentis Edwards, J., of transporting alcohol without a license in violation of MCL 436.1901; MSA 18.1175(901). The court thereafter agreed with the defendant's contention that the statute did not specify that a license is required to transport alcohol and directed a verdict of acquittal. The prosecution appealed.

The Court of Appeals held:

1. The statute does not specifically require one who transports alcohol to be licensed to do so. The statute merely requires anyone transporting alcohol to comply with the provisions of the Michigan Liquor Control Code (MLCC), MCL 436.1101 et seq.; MSA 18.1175(101) et seq.

2. Subsection 203(1) of the MLCC, MCL 436.1203(1); MSA 18.1175(203)(1), specifically requires a license for the sale, delivery, or importation of alcoholic liquor. The term "delivery" in subsection 203(1) does not include the transportation of alcohol. The words "transporting" and "delivery" have different meanings. The court properly found that the MLCC does not require a license to transport alcohol under the circumstances of this case.

Affirmed.

1. INTOXICATING LIQUORS — LIQUOR CONTROL CODE —WORDS AND PHRASES — TRANSPORT — DELIVER.

The provision of the Michigan Liquor Control Code that specifically requires a license for the "sale, delivery, or importation of alcoholic liquor" does not specify that a person transporting alcoholic liquor must be licensed; the terms "transporting" and "delivery" have different meanings, and the statute's use of the term "delivery" does not include the transportation of alcohol; to "transport" is to convey from one place or station to another as by car, boat, or rail, whereas the term "delivery," unless otherwise indicated by the context, connotes the act of putting property in the possession of another (MCL 436.1203[1]; MSA 18.1175[203][1]).

2. INTOXICATING LIQUORS — LIQUOR CONTROL CODE — TRANSPORTATION.

The provisions of MCL 436.1901; MSA 18.1175(901) require anyone transporting alcoholic liquor to comply with the provisions of the Michigan Liquor Control Code but do not specifically require one who transports alcohol to be licensed to do so.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Ana I. Quiroz*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*), for the defendant on appeal.

Before: GRIBBS, P.J., and M. J. KELLY and SAWYER, JJ.

M. J. KELLY, J. On May 21, 1999, following a bench trial, defendant, Mazen Al-Saiegh, was convicted of transporting alcohol without a license, MCL 436.1901; MSA 18.1175(901).[1] Defendant was sentenced to one year of probation. Subsequently, defendant, arguing that the statute in question did not specify that a license was required to transport beer, filed a motion for a new trial or, alternatively, for a directed verdict of acquittal. The trial court agreed with defendant and entered an order for a directed verdict of acquittal. The prosecution appeals as of right from the trial court's order of acquittal. We affirm.

The facts involved in this matter are not in dispute. On June 3, 1998, Michigan State Police Trooper Christopher Bommarito observed a U-Haul truck traveling

---

[1] Defendant was originally charged pursuant to MCL 436.32; MSA 18.1003, which was repealed on April 14, 1998, before the date of the instant offense (June 3, 1998). The prosecutor was allowed to amend the felony information to reflect the new statutory provision, a provision contained in the then newly enacted Liquor Control Code, MCL 436.1101 *et seq.*; MSA 18.1175(101) *et seq.*

west on Interstate 94. The U-Haul was tilted to the side and Trooper Bommarito stopped the truck for safety purposes. Defendant was driving the truck.[2] Defendant told Trooper Bommarito that he was carrying cases of beer. Trooper Bommarito then observed approximately three hundred cases of beer in the back of the truck.[3] Defendant told Trooper Bommarito that he had picked up the beer from a party store in Detroit and was taking it to another party store in Belleville. After it was discovered that defendant had outstanding warrants for his arrest, defendant was placed in custody and the U-Haul was impounded. Subsequently, defendant was charged with transporting alcohol without a license.

At trial, David A. Mazurek, an enforcement supervisor for the Michigan Liquor Control Commission, testified that in 1998 the Legislature established the Michigan Liquor Control Code (hereinafter referred to as the MLCC), MCL 436.1101 *et seq.*; MSA 18.1175(101) *et seq.*, to create a method of licensing every aspect, including the transportation, of alcoholic beverages in the state of Michigan. According to Mazurek, the transportation of alcoholic beverages in Michigan without a license is illegal. However, Mazurek was unable to specify the statutory provisions that required licensing to transport alcohol.

After being found guilty of transporting alcohol without a license, defendant filed a motion for a new trial or, alternatively, for a directed verdict of acquit-

---

[2] A passenger in the truck, Ahmed Nasir, was found not guilty of transporting alcohol without a license.

[3] Approximately twenty-five to thirty of the cases of beer had fallen over to the right side of the truck, accounting for the fact that the truck was tilted to the side when first observed by Trooper Bommarito on I-94.

tal, claiming, among other things, that the MLCC did not specify that a license was required to transport beer. Defendant argued that this case was similar to an individual buying a six-pack of beer and transporting it home without a license. Conversely, the prosecutor argued that the plain language of the MLCC provided that in order to transport alcoholic beverages, the individual must be licensed by the MLCC. The trial court found that it was not clear from the statute that a license was required to transport beer, ruled that the statutory provision in question was vague, and directed a verdict of acquittal in favor of defendant. The prosecution appeals as of right.

The prosecution claims that the trial court erred in granting defendant's motion for a directed verdict of acquittal. The trial court granted this motion after finding that MCL 436.1901; MSA 18.1175(901) did not specifically provide that a person who transports alcohol must be licensed. We must decide whether the trial court properly construed the statutory provision in question. The interpretation and application of statutes is a question of law that is reviewed de novo by this Court. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

In *People v Stone Transport, Inc*, 241 Mich App 49, 50-51; 613 NW2d 737 (2000), this Court set forth the basic principles of statutory construction:

> When interpreting a statute, this Court's primary goal is to ascertain and give effect to the intent of the Legislature. To discern the intent of the Legislature, this Court must first look to the specific language of the statute. If the plain and ordinary meaning of the statutory language is clear, judicial construction is inappropriate. However, if reasonable minds could differ regarding the statute's meaning, judicial construction is appropriate. This Court must look to

the purpose of the statute, the harm it is designed to remedy, and apply a reasonable construction that accomplishes the statute's purpose. "[L]iteral construction of a statute that would produce absurd and unjust results clearly inconsistent with the purposes and policies of the statute should be avoided." [Citations omitted.]

The Legislature repealed the Liquor Control Act, MCL 436.1 *et seq.*; MSA 18.971 *et seq.*, in 1998 and, in its stead, enacted the MLCC. *People v Antkoviak*, 242 Mich App 424, 467; 619 NW2d 18 (2000). Defendant was convicted of transporting alcohol without a license in violation of MCL 436.1901; MSA 18.1175(901), which is entitled in the Michigan Compiled Laws Annotated "Traffic in alcoholic liquor by licensees only," a provision under the newly enacted MLCC, which provides, in pertinent part, as follows:

A person, directly or indirectly, himself or herself or by his or her clerk, agent, or employee, shall not manufacture, manufacture for sale, sell, offer to keep for sale, barter, furnish, import, import for sale, transport for hire, transport, or possess any alcoholic liquor unless the person complies with this act.

The pivotal issue in the present case is whether this provision of the MLCC specifically requires a license to transport alcohol in this state. The problem with the provision is that it does not specifically require one who transports alcohol to be licensed to do so; it merely requires anyone transporting alcohol to comply with the provisions of the MLCC. The catch line in the Michigan Compiled Laws Annotated is the only portion of the provision that specifically mandates licensing for an individual to transport alcohol. MCL 8.4b; MSA 2.215 provides:

The catch line heading of any section of the statutes that follows the act section number shall in no way be deemed to be a part of the section or the statute, or be used to construe the section more broadly or narrowly than the text of the section would indicate, but shall be deemed to be inserted for purposes of convenience to persons using publications of the statutes.

Absent the catch line, the statutory provision in question provides only that a person may not transport any alcoholic liquor unless the person complies with the act. Consequently, the issue is whether any other portion of the MLCC mandates licensing for the transportation of alcohol.

First, we note that the prosecution's reliance on the preamble to the MLCC to supply the answer to the question before us is misplaced.[4] Although a preamble may be used to interpret the purpose and scope of an act, it may not be considered controlling authority to

---

[4] The preamble to the MLCC provides as follows:

AN ACT to create a commission for the control of the alcoholic beverage traffic within this state, and to prescribe its powers, duties, and limitations; to provide for powers and duties for certain state departments and agencies; to impose certain taxes for certain purposes; *to provide for the control of the alcoholic liquor traffic within this state* and to provide for the power to establish state liquor stores; to provide for the care and treatment of alcoholics; to provide for the incorporation of farmer cooperative wineries and the granting of certain rights and privileges to those cooperatives; to provide for the licensing and taxation of activities regulated under this act and the disposition of the money received under this act; to prescribe liability for retail licensees under certain circumstances and to require security for that liability; to provide procedures, defenses, and remedies regarding violations of this act; to provide for the enforcement and to prescribe penalties for violations of this act; to provide for allocation of certain funds for certain purposes; to provide for the confiscation and disposition of property seized under this act; to provide referenda under certain circumstances; and to repeal acts and parts of acts. [Emphasis supplied.]

construe the provisions of an act. *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991). Moreover, although the preamble indicates that one of the purposes of the MLCC is to provide for the control of the alcoholic traffic within Michigan, it does not answer the question before us: whether a license is required under the MLCC in order to transport alcohol within this state.[5]

In order to answer this specific question, the parties direct us to MCL 436.1203(1); MSA 18.1175(203)(1), which provides, in pertinent part, as follows:

> Except as provided in this section and section 301, a *sale, delivery, or importation* of alcoholic liquor, including alcoholic liquor for personal use, shall not be made in this state unless the *sale, delivery, or importation* is made by the commission, the commission's authorized agent or distributor, an authorized distribution agent approved by order of the commission, *a person licensed by the commission*, or

---

[5] We do agree with the prosecutor's argument that a statutory challenge on the grounds of vagueness must be viewed in light of the facts presented in the specific case at bar. Put another way, in light of the fact that the uncontradicted evidence presented at trial indicated that defendant was transporting three hundred cases of beer from one party store to another, not that the beer was for defendant's personal use, defendant does not have standing to make a hypothetical claim that a consumer transporting alcohol for his personal use would be in violation of the statute. A claim that a statute is vague must be viewed in light of the specific facts at hand. *People v Cavaiani*, 172 Mich App 706; 432 NW2d 409 (1988); *People v Williams*, 142 Mich App 611, 612-613; 370 NW2d 7 (1985); *People v Harbour*, 76 Mich App 552, 558; 257 NW2d 165 (1977). A defendant has standing to raise a vagueness challenge only if the statute is vague as applied to his conduct. *People v Mitchell*, 131 Mich App 69, 74; 345 NW2d 611 (1983). Even though a statute may be susceptible to impermissible interpretations, reversal is not required where the statute can be narrowly construed so as to render it sufficiently definite to avoid vagueness and where the defendant's conduct falls within that prescribed by the properly construed statute. *Harbour, supra*, p 558. This conclusion does not resolve the issue whether the MLCC requires that someone transporting alcohol, not for personal use, must be licensed to do so in this state.

by prior written order of the commission. [Emphasis
supplied.]

This provision appears to specifically require a
license to sell, deliver, or import alcohol. However,
conspicuously absent from § 203 is any reference to
transporting alcohol. Although defendant was charged
with transporting alcohol, not delivering alcohol, the
prosecutor claims that the term "delivery" of alco-
holic liquor contained in § 203 includes the transpor-
tation of alcohol and, therefore, defendant was
required to be licensed under § 203. We disagree.

Because neither term is defined in the MLCC, we
accord each term its plain and ordinary meaning.
MCL 8.3a; MSA 2.212(1); *Western Michigan Univ Bd
of Control v Michigan*, 455 Mich 531, 539; 565 NW2d
828 (1997); *People v Tracy*, 186 Mich App 171, 176;
463 NW2d 457 (1990). In discerning the meaning of
these terms, it is proper to consult dictionary defini-
tions. *People v Morey*, 461 Mich 325, 330; 603 NW2d
250 (1999). Black's Law Dictionary (7th ed), defines
the term "transport" as "[t]o carry or convey (a thing)
from one place to another." The definition is consis-
tent with the meaning given to the term by other
courts in cases involving the transportation of alco-
hol. See, e.g., *State v Seta*, 16 Ohio App 2d 97; 242
NE2d 349 (1968) (to transport means to carry; to con-
vey; as by wagon, cart, sleigh, boat, or otherwise);
*State v Welch*, 232 NC 77, 81; 59 SE2d 199 (1950) (the
word "transport" means to carry or convey from one
place to another). The term "delivery" is defined as
"[t]he formal act of transferring or conveying some-
thing . . . the giving or yielding possession or control
of something to another." Black's Law Dictionary (7th
ed). See also *Integrity Ins Co v Marine Midland*

*Bank-Western,* 90 Misc 2d 868, 870; 396 NYS2d 319 (Sup Ct, 1977) (delivery consists of the act by which goods are placed within the actual or constructive possession of another). As can be seen from the dictionary definitions, the terms "transporting" and "delivery" have different meanings. To transport is to convey from one place or station to another as by car, boat, or rail, whereas the word "delivery," unless otherwise indicated by the context, connotes the act of putting property into the possession of another. See *Wycoff Warehouse, Inc v Public Service Comm,* 16 Utah 2d 431, 433; 403 P2d 168 (1965). After examining their plain meanings, it is clear that the words have different meanings. Therefore, we must reject the prosecution's claim that "delivery" of alcoholic liquor includes the "transporting" of alcohol and, therefore, defendant was required to be licensed to transport alcohol under § 203. The Legislature is presumed to have intended the meaning it plainly expressed. *People v Venticinque,* 459 Mich 90, 99; 586 NW2d 732 (1998), and nothing will be read into a statute that is not within the manifest intention of the Legislature as gathered from the provisions of the act itself. *In re S R,* 229 Mich App 310, 314; 581 NW2d 291 (1998). While we surmise that the Legislature, when it enacted the MLCC, may have intended to require a license to transport alcohol under the circumstances of this case, we are not permitted to speculate regarding the probable intent of the Legislature beyond the specific language expressed in the statute, *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd,* 240 Mich App 153, 173; 610 NW2d 613 (2000), and the prosecution has provided us with no provision that specifically requires a

license to transport alcohol under the circumstances of this case.

In sum, because there appears to be no provision within the MLCC that requires a license to transport alcohol under the circumstances of this case, we conclude that the trial court properly directed a verdict of acquittal in favor of defendant.

Affirmed.